JOHN W. LUMSDON, Appellant, *v.* THEODORE GILMAN and Another, Respondents.

*Failure of a bank to return an unpaid draft to the depositor thereof — a demand necessary before the depositor can sue therefor.*

The fact that a bank, with which a depositor has deposited a draft which is unpaid, does not return the draft to its depositor, but forwards it to the assignee of the person liable thereon, does not give to the depositor the right to recover of the bank the amount for which it was drawn, if the draft has never been demanded by him from the bank.

*Semble,* that if the bank refuses to return the draft upon demand the depositor thereof may recover damages for its detention.

APPEAL by the plaintiff, John W. Lumsdon, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of November, 1893, upon the verdict of a jury rendered after a trial at the

New York Circuit, and also from an order entered in said clerk's office on the 5th day of November, 1893, denying the plaintiff's motion for a new trial made upon the minutes.

For several years past the defendants have been engaged in the business of banking, under the firm name of Gilman, Son & Co., at No. 62 Cedar street, New York. For six or eight years past the plaintiff has kept an account with the defendants, the ordinary one kept by a customer with a bank. J. J. Nicholson & Sons were engaged in banking at the city of Baltimore, kept an account with Gilman, Son & Co., and were accustomed to send items to that firm for collection against bankers, firms and persons in New York and in eastern cities. When items due on demand were received from J. J. Nicholson & Sons for collection, it was the practice of Gilman, Son & Co. to credit them to J. J. Nicholson & Sons, and, if any of the items were subsequently dishonored, to charge them back, so oftentimes the apparent credit of J. J. Nicholson & Sons was greater than that which they were entitled to have. January 14, 1892, the plaintiff owned a draft for $500, payable to his order, drawn by J. J. Nicholson & Sons on defendant. After banking hours of that day plaintiff learned that J. J. Nicholson & Sons had failed, and he went to defendants' place of business, which was closed for the day, but secured an entrance and found defendants' bookkeeper, assistant bookkeeper and assistant corresponding clerk in the office. The plaintiff told them of the failure of J. J. Nicholson & Sons, which fact they knew, presented his draft and asked to have it credited to his account. The plaintiff testified: " I went up to the bank about four o'clock, and in my frank way I stated the fact that the banking house in Baltimore had failed, and asked them if they could place that to my credit. The young man who was present at the time — I think that young man there. In a few moments the bookkeeper came in — sitting by Mr. Gilman there, and he said the account was all right; they had balance enough to cover it and they would accept it, as they had not received any official announcement of the failure, provided we did not hold him — he did not know how Mr. Gilman would take it — if I did not hold him personally responsible he would accept it; I sent my book up afterwards, the next day, and it was duly entered up. I considered it then settled. I did not have my book with me, and I simply left

the draft until he had consulted with Mr. Gilman, and sent my book up the next day, and it was duly entered on my book. Sometimes I might send up my deposit, and, if I did not have the book, it would be entered on their books, and sent my books afterwards and it was entered there."

This was all the evidence given by, or in behalf of, the plaintiff as to what occurred when the draft was credited. The bookkeeper testified in behalf of the defendants: "He (Lumsdon) said he had a draft of J. J. Nicholson & Sons, $500, drawn to his order, and he carried it around in his pocket during the day, and forgot to deposit it, and wanted to know if I could not help him out and credit his account. I told him we had heard of the failure, and we were not paying drafts of theirs, and although, according to our books, he had a credit, I could not credit it to him. He wanted to know, as a favor, if I could help him out. I told him, as he was an old customer of ours, I would rather see him get the credit, and any favor I could do him I would be very glad. He said if I would only credit his account — if there was anything occurred, if everything was not all right, I might charge it back to his account. I said, of course, if that was the case, I should be glad to do it. I told him, although Nicholson & Sons' account showed a balance enough for this amount, items that we had received and deposited we had not heard from, and that I was not sure of that account. If anything came up, he said, 'if you will do that, I will see Gilman, Son & Co. will lose nothing, if you will credit my account; if there is anything the matter you can charge it back.' Our accounts were all taken off, our books footed up and balanced for the night, so I had the young man erase Nicholson's account there and add this draft in there. We knew of Nicholson's failure during the day; along during business hours, two or three hours before business closed."

The assistant bookkeeper and the assistant corresponding clerk, who were present at the interview, corroborated the evidence of the bookkeeper. At the time of the credit of the account there was an apparent balance to the credit of J. J. Nicholson & Sons of $1,000, but a few days afterwards it was discovered that there was an error in the account, and that there was a small balance due from J. J. Nicholson & Sons to the defendants, and thereupon the draft for $500 was charged to the plaintiff in his account, who refused to

recognize the validity of the charge, and brought this action for the recovery of that sum.

*Henry B. Johnson*, for the appellant.

*D. B. Ogden*, for the respondents.

FOLLETT, J.:

The only issue of fact in the case was, what was the agreement between the plaintiff and the defendants' clerks? The learned trial justice submitted this issue to the jury, which found in favor of the defendants. The verdict controls the rights of the litigants, and it underlies and cuts off the questions which the plaintiff seeks to raise on this appeal. Whether the defendants were negligent in not knowing the true state of the account of J. J. Nicholson & Sons, and the ordinary effect of the payment of a check or draft by the drawee to the holder, become immaterial questions in the face of the agreement as found by the jury. The fact that the defendants had not returned the draft, but had forwarded it· to the assignee of J. J. Nicholson & Sons, did not give the plaintiff the right to recover the amount for which it was drawn. It had never been demanded, and, if the plaintiff demands it and the defendants fail to deliver it, the question of the plaintiff's right to recover damages can be raised in another action, but not in this.

The judgment and order should be affirmed, with costs.

PARKER, J., concurred.

VAN BRUNT, P. J.:

It is apparent from the plaintiff's own evidence that the book-keeper, in accepting this check after business hours, was acting without authority, and also that he accepted it subject to Mr. Gilman's approval. Upon the undisputed evidence no right of recovery was shown.

Judgment and order affirmed, with costs.